UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | } | |
| | } | |
| Tina Renae Ferguson, | } | Case No. 17-41615-JJR13 |
| | } | |
| Debtor. | } | |

| | | |
|---|---|---|
| Tina Renae Ferguson, | } | |
| | } | |
| Plaintiff, | } | |
| v. | } | AP No. 18-40008-JJR |
| | } | |
| Turtle Creek Assets, Ltd., | } | |
| | } | |
| Defendant. | } | |

## MEMORANDUM OPINION

### Background and Findings

Tina Renae Ferguson (the "Debtor") filed a petition for relief under chapter 13 (Bk Doc. 1)[1] of the Bankruptcy Code.[2] Attorney David G. Poston ("Poston") and his law firm, Brock & Stout, LLC ("Brock") represented the Debtor in her bankruptcy case, and they identified

---

[1] A document filed in the Debtor's bankruptcy case is referred to as a "Bk Doc." followed by its ECF number, and a document filed in the adversary proceeding is referred to as an "AP Doc." followed by its ECF number. Some documents were filed in both the bankruptcy case and AP.

[2] 11 U.S.C. 101, *et seq.*, and herein referred to as the "Code." The "§" symbol refers to a section, subsection, or other subdivision of the Code.

themselves in Form 2030, Disclosure of Compensation of Attorney for Debtor(s) (Bk Doc. 1, p. 55), as follows:

> David G. Poston
> Brock and Stout
> PO Box 311167
> Enterprise, AL 36331
> (334)393-4357 Fax: (334)393-0026
> brockstout@enter.twcbc.com

On April 18, 2018, while the case was pending, attorney Anthony B. Bush ("Bush") filed an adversary proceeding (AP No. 18-40008 and herein, the "AP") on behalf of the Debtor against one of her creditors, claiming the creditor violated the automatic stay. In the original and amended adversary complaints (AP Docs. 1, 18), Bush identified himself as follows:

> **OF COUNSEL TO BROCK & STOUT, LLC:**
> Anthony B. Bush, Esq.
> 3198 Parliament Circle 302
> Montgomery, Alabama 36116
> Phone: (334)263-7733
> Facsimile: (334)832-4390
> E-mail:anthonybbush@yahoo.com
> abush@bushlegalfirm.com

Over four months after the AP was commenced, the Debtor and Bush filed an Application for Approval of Employment of Professional Person (Bk Doc. 126 and herein, the "Employment Application") pursuant to Code § 327(e) and Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Rules" and individually, a "Rule"), asking the court to approve Bush's employment as special counsel to represent the Debtor in the AP.[3] Paragraph 5 of the Employment

---

[3] Bush offered no reason for the delay in seeking approval of his employment. An attorney seeking court approval for employment as special counsel pursuant to § 327(e) should do so before he commences work for which he expects to be compensated. Attorneys who commence their work for a debtor or trustee without first being approved by the court risk not having their application for compensation approved for services rendered before their retention was approved. If time is of the essence, and there is legitimate risk of irreparable harm if an attorney delays

2

Application recites Bush's "position as Of Counsel to Debtor's bankruptcy firm for similar cases" as one of the reasons for selecting Bush as special counsel in this matter. In paragraph 6, Bush represented as follows:

> Pursuant to Rule 2016(a), Fed. R. Bank. Proc., the undersigned counsel represents that he has an agreement with the Brock & Stout, LLC, Debtor's Chapter 13 Bankruptcy Counsel and the Referring Attorney, relative to this adversary proceeding. In the event this case does not involve complex and/or extensive litigation, the undersigned counsel will receive seventy (70) percent of the total attorney's fees paid, with the remaining percentage received by the Referring Attorney. In the event this case does involve complex and/or extensive litigation and fees are sought, the undersigned counsel and the Referring Attorney will provide detailed hourly billing to the Court and seek the Court's approval of their fees based upon such submissions. The undersigned counsel serves as "Of Counsel" to Brock & Stout, LLC pursuant to a written agreement.

And in paragraph 7, Bush reiterated that "[t]he undersigned counsel serves in an Of Counsel position to Brock & Stout, LLC, which is the Debtor's bankruptcy counsel's firm."

The court approved the Employment Application (Bk Doc. 153) but reserved ruling on the fees Bush requested, stating, "The terms of compensation are not approved at this time and shall be subject to review following the filing of an application consistent with the requirements of the Bankruptcy Code, 11 U.S.C. Section 101 et seq. and the Rules of Bankruptcy Procedure."

Bush, as counsel for the Debtor, filed a Motion to Approve Compromise and Settlement (AP Doc. 31, Bk Doc. 137 and herein, the "Settlement Motion") pursuant to Rule 9019(a), seeking the court's approval of a compromise reached with the creditor in the AP. The settlement proposed the creditor would pay a total of $5,750.00, of which $3,162.50 would be disbursed to the Debtor[4] and $2,587.50 would be paid to Bush for attorney's fees. The court entered an order (AP Doc.

---

commencing work until after his employment is approved, he should, on those rare occasions, seek *nunc pro tunc* approval of his employment and an expedited hearing.

[4] The Debtor amended Schedule C (Bk Doc. 130) and claimed her portion of the settlement proceeds as exempt under Code § 522(b)(3). No one objected to her amended exemption claim.

3

Case 18-40008-JJR    Doc 48    Filed 03/15/19    Entered 03/15/19 15:55:53    Desc Main
Document    Page 3 of 11

45, Bk Doc. 160) approving the proposed compromise of $5,750.00, but again did not rule on the attorney's fees requested by Bush.

Finally, Bush filed an Application for Approval of Attorney Fees and Expenses (Bk Doc. 157 and herein, the "Fee Application") pursuant to Rule 2016(a), in which he sought fees in the amount of $2,587.50 (there were no expenses), representing 45% of the gross settlement, which matched the amount requested, but not approved, in the Settlement Motion. The Bankruptcy Administrator for this District (the "BA") filed a Limited Objection to the Application for Compensation (Bk Doc. 162) in which he complained that fees in the amount of 45% of the settlement were excessive, and recommended fees of 33 1/3%. Additionally, because the Fee Application indicated the fees would be shared with Brock, the BA asserted that "[d]etails of the sharing of the fees should be provided" and Brock "should file an Application for Compensation meeting its burden of proof as to the portion of fees earned." Brock filed no such application despite the BA's objection.

At the hearing on the Fee Application, the BA introduced into evidence a copy of the "Of Counsel Agreement Between Brock and Bush Law Firm, LLC" dated August 10, 2015 (BA Ex. 1 and herein, the "Of Counsel Agreement"), the same written agreement referred to in paragraph 6 (quoted *supra*) of Bush's Employment Application.

Analysis and Conclusions

First, the court agrees with the BA that attorney's fees calculated at 45% of the gross settlement are excessive for a simple stay-violation AP. It appears the underlying facts giving rise to the claim against the creditor—as alleged in the amended complaint—required little investigation, were not complicated, and the Debtor's damages were limited. The creditor never filed an answer, the Debtor conducted no formal discovery and filed no dispositive motions, and

the creditor capitulated five months after service of the amended complaint. Nonetheless, the total dollar amount of the compromise appeared reasonable and was within the range this court would anticipate based on the facts and claims asserted in the amended complaint. The court is confident that Bush was diligent in pursuing the Debtor's claim and otherwise did a good job representing her interest. Nonetheless, the court is guided by the Eleventh Circuit's ruling in *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292 (11th Cir. 1988) and the continued acceptance of the factors prescribed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) when it considers the reasonableness of Bush's attorney's fees against an objectively reasonable standard, and in so doing the court finds that while fees of 45% of the total settlement are marginally excessive, a reduction to 40%—$2,300.00—is reasonable and will be allowed.[5]

---

[5] Code § 330(a)(2) provides that "The court may . . . award compensation [to an attorney employed under § 327] that is less than the amount of compensation that is requested." Furthermore, when Bush's employment was approved, the court specifically reserved ruling on his compensation until he filed a fee application. (Bk Doc. 153). The court considers objective reasonableness of the fee by assessing the *Johnson* factors in light of the court's own knowledge and experience with attorneys of similar skill pursuing similar claims with similar results, as permitted by *Norman*, 836 F.2d at 1303, citing *Johnson*'s 12 factors discussed at 488 F.2d at 717-19. The particular factors that mitigate toward a reduction from the requested 45% here include the time and labor required being limited (no discovery, motion practice, or trial); the novelty or difficulty of the legal question being rather simple (the stay violation was not novel or difficult to establish); the customary fee (the court routinely awards 33 1/3% of the recovery as the contingency fee in similar matters unless there is a showing of unusually long attorney time required or the case involves more complex factual or legal issues that makes it more difficult to establish liability or prove damages, and takes judicial notice of this common fee structure, and that there are well-qualified attorneys who will accept stay-violation cases on a 33 1/3% contingency fee basis); and the awards in similar cases in this division. The other *Johnson* factors justify the 40% fee (including the skill required, the preclusion of other employment being minimal here, the contingent nature of the fee, the lack of limitations imposed by the client or circumstances, the amount involved and results obtained being relatively small so that a larger percentage than 33 1/3% is more commensurate with the work performed, the experience of the attorney, the case not being undesirable for any ascertainable reason, and the temporary and short-term nature and length of the relationship with the client).

Bush argued that to induce attorneys to represent debtors in simple stay-violation adversary proceedings, the court should award contingency fees greater than 33 1/3% of the recovery because the damages, and hence the attorney's fees are usually small. However, the Eleventh Circuit has

5

However, if Bush kept contemporaneous time records of his work, he may file an amended fee application supported by such records within 14 days of the entry of the Order associated with this Opinion. If an amended fee application is timely filed with detailed contemporaneous time records, the court will treat that as a motion to reconsider its ruling and will then determine if Bush's fees should be increased or decreased based on the time he spent pursuing the Debtor's claims and the settlement.[6]

Next, for the reasons the court will explain, it further agrees with the BA that the arrangement between Bush and Brock—the Of Counsel Agreement— is a fee sharing agreement not allowed under the Code. Therefore, Brock is not entitled to any portion of the fee otherwise awarded to Bush. Bush was employed pursuant to Code § 327(e), not to represent the Debtor in her chapter 13 case—that was Brock's job—but for a specified special purpose: stop the creditor from further violating the automatic stay and recover damages. And he was entitled to "reasonable compensation for actual, necessary services rendered . . . ." Code § 330(a)(1)(A). His fees are an administrative expense allowed under § 503(b)(2) for "compensation and reimbursement awarded under section 330(a) of this title." However, Code § 504(a) states that "a person receiving

---

ruled that actual damages in § 362(k) proceedings may include the debtor's attorney's fees incurred in both stopping the violation and pursuing recovery of damages and defending an appeal. *Mantiply v. Horne (In re Horne),* 876 F.3d 1076 (11th Cir. 2017). Thus, Bush may find that in many cases, he would be entitled to larger fees based on an hourly fee arrangement that considers the lodestar—reasonable hours expended billed at a reasonable hourly rate—rather than a contingency fee. Those fees would be part of the actual damages that the offending creditor must pay, without reducing the debtor's recovery for any other actual damages sustained (such as missing work or paying to rent a car if the debtor's vehicle was repossessed in violation of the stay, for example).

[6] If Bush does not file an amended fee application within 14 days, the allowance of his fees in the amount of $2,300.00 shall be final, and the balance of the settlement, $3,450.00, shall be disbursed to the Debtor unless there is a timely objection by the trustee, BA, or other party in interest.

6

compensation or reimbursement . . . under section 503(b)(2) . . . may not share or agree to share . . . any such compensation or reimbursement with another person . . . ."[7] But there is an exception under § 504(b)(1), which provides that "[a] member, partner, or regular associate in a professional association, corporation, or partnership may share compensation or reimbursement received under section 503(b)(2) . . . with another member, partner, or regular associate in such association, corporation, or partnership . . . ." Bush and Brock argue that Bush's relationship with Brock as provided in the Of Counsel Agreement satisfies the exception permitting fee sharing between professionals.

The Of Counsel Agreement purports to "appoint [Bush] as 'Consumer Rights Counsel' on behalf of [Brock] and [Brock's] clients" and "authorizes [Bush] 'to identify himself as 'Consumer Rights Counsel' for [Brock] and publicize his status as 'Of Counsel' to [Brock] in all commercially reasonable manners, places and times." Bush may use Brock's letterhead when communicating with Brock's clients, courts, and opposing counsel with respect to litigation matters Bush is handling on behalf of Brock's clients. Bush is allowed access to Brock's bankruptcy clients' files to search for consumer rights claims, defined as "FDCPA, TILA, FCRA, TCPA, Automatic Stay Violations, and Discharge Injunction Violations." Brock is not obligated to refer matters to Bush but may do so if Brock discovers a bankruptcy client has a potential consumer rights claim. Brock

---

[7] With the exception of matters under bankruptcy court jurisdiction, there is nothing unethical or even unsavory about a referring lawyer receiving a portion of a fee earned by another, unaffiliated lawyer who actually performed the work that ultimately resulted in a recovery from which the fee was earned, so long as, before the referral is made, the client is informed of the referral and that the fee will be divided, and consents, and the total fee is not excessive. Disclosure of the referral, the division of the fees, and the client's consent should all be made in writing. Referral fees are most common in state and federal court tort cases. *See* Ala. R. Prof. Conduct 1.5(e)(1)(c), which permits "in a contingency fee case, the division [of a fee] between the referring or forwarding lawyer and the receiving lawyer" even if the division of the fee is not proportional to the services of each and even in the absence of joint responsibility for the representation. But sharing attorney's fees in bankruptcy matters is strictly limited by Code § 504.

7

agrees that if it elects to refer consumer rights claims, it will do so only to Bush. Nonetheless, their agreement emphasizes that the ownership, goodwill, capital, liabilities, and employees associated with, and income generated by their respective law firms are to remain distinct and separate for all purposes with the sole exception of fees generated by Bush from consumer claims he pursues on behalf of Brock's bankruptcy clients: Brock is entitled to 30% and Bush 70% of those fees, but Bush is expected to perform all the work and pay all the expenses with respect to those claims. Significantly, Bush represents non-Brock clients, and he has no obligation to share or otherwise account for fees earned from his work for those clients.

After studying the Of Counsel Agreement, the court finds it does not cause Bush to be a member, partner, or regular associate in Brock as contemplated by Code § 504(b)(1). By juxtaposing the magic words "of counsel" in their agreement with the definition of "Regular associate" in Rule 9001(10), Bush and Brock might argue that their fee arrangement qualifies Bush for the § 504(b)(1) exception. Rule 9001(10) defines "Regular associate" as "any attorney regularly employed by, associated *with*, or *counsel to* an individual or firm." (emphasis added.) However, the definitions in Rule 9001(1) - (12) apply to the Rules, not the Code, and the terms "associated with" and "counsel to" found in Rule 9001(10) are not found in § 504(b)(1). Code § 504(b)(1) requires the attorney to be a "regular associate *in*" not merely *associated with* another attorney or firm, and it does not include the obfuscatory affiliations identified as "of counsel" or "counsel to." These are all distinctions that make a difference, as another bankruptcy court explained:

> However, it is section 504(b)(1) which provides the exception to section 504(a). That section is not so broad. Rather, it provides that a "regular associate *in* a professional association, corporation, or partnership" (emphasis added) may share compensation. *See In re Peterson*, 2004 WL 189520, at *5 (Bankr. D. Idaho Aug. 25, 2004) (notwithstanding Rule 9001's language, the plain language of section 504(b)(1) only allows an attorney to share fees with a member, partner, or associate

8

> in the same professional association, corporation, or partnership). It is clear that Clarke is not a "regular associate *in*" Newbern's firm, and that he therefore does not fall within the exception to section 504(a).

*In re Ferguson*, 445 B.R. 744, 752 (Bankr. N.D. Tx. 2011) (emphasis in original).

Merely identifying Bush as "of counsel" and "consumer rights counsel" does not satisfy the affiliation contemplated by § 504(b)(1). The Of Counsel Agreement does not establish a professional and business relationship between Bush and Brock beyond sharing fees earned by Bush from claims he independently pursues on behalf of Brock's bankruptcy clients. Perhaps most telling, there is no restriction on Bush entering into similar fee-sharing agreements with any number of other lawyers and law firms. And even if the broader definition of "Regular associate" in Rule 9001(10) were controlling, Bush would still be "of counsel" with Brock in name only, not in practice. The American Bar Association in Formal Opinion 90-357 offered four different definitions for "of counsel," none of which describe the relationship between Bush and Brock:

[1]. A part-time practitioner who practices law in association with a firm, but on a basis different from that of the mainstream lawyers in the firm. Such part-time practitioners are sometimes lawyers who have decided to change from a full-time practice, either with that firm or with another, to a part-time one, or sometimes lawyers who have changed careers entirely, as for example former judges or government officials, or attorneys who transition from corporate/in-house practice to law firm practice.
[2]. A retired partner of the firm who, although not actively practicing law, nonetheless remains associated with the firm and available for occasional consultation.
[3]. A lawyer who is, in effect, a probationary partner-to-be: usually a lawyer brought into the firm laterally with the expectation of becoming partner after a relatively short period of time.

[4]. A permanent status in between those of partner and associate—akin to [#3], but having the quality of tenure, or something close to it, and lacking that of an expectation of likely promotion to full partner status.

ABA Comm. on Ethics and Professional Responsibility, Formal Op. 90-357 (1990).

Thus, the court concludes that the Of Counsel Agreement is a thinly veiled, albeit fully disclosed, attempt to bypass the prohibition against fee sharing under Code § 504(a).[8] It established a simple arrangement: Bush is given access to Brock's bankruptcy client files, which Bush examines for consumer rights claims along with stay and discharge injunction violations, the latter probably most often referred by Brock when its clients complain about creditors' postpetition misconduct. Once a claim is identified, Bush files an application with the court seeking employment as special counsel under § 327(e)—hopefully before commencing work for which he expects to be compensated—and following a recovery via settlement or trial, Bush files a fee application. Once Bush's fee is approved by the court, he shares it with Brock on a 70/30 basis but without Brock seeking court approval of its employment or for 30% of the fees. Merely labeling that arrangement as creating an "of counsel" relationship does not circumvent § 504(a)'s prohibition on sharing fees; nomenclature does not trump substance.

Nonetheless, there is a solution if Brock wants a share of Bush's fee; a solution sanctioned by the Code and Rules. First, Brock must provide valuable services that ultimately result in a recovery for the debtor or estate; more than referring the debtor and the claim to Bush. Like Bush, Brock should seek employment as special counsel under § 327(e) and if there is a recovery, Brock

---

[8] The court is not accusing Bush and Brock of unethical conduct or of attempting to conceal their agreement. Their Of Counsel Agreement was disclosed in Bush's Employment Application.

10

must seek court approval of its fees. Brock and Bush should support their respective fee requests based on the actual allocation of work and respective time expended.

The foregoing shall constitute the court's findings and conclusions, and a conforming Order will be entered in the Debtor's bankruptcy case and the AP.

Done this 15th day of March 2019.

/s/ James J. Robinson
JAMES J. ROBINSON
CHIEF U.S. BANKRUPTCY JUDGE